UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JOHN CARVER,<br><br>          Plaintiff,<br><br>    v.<br><br>MICHAEL MUKASEY, UNITED STATES ATTORNEY GENERAL,<br><br>          Defendant. | CASE NO. C08-354RSM<br><br>ORDER DENYING DEFENDANT'S MOTION TO DISMISS |

## **I. INTRODUCTION**

This matter comes before the Court on Defendant's Motion to Dismiss. (Dkt. #5). Pursuant to Fed. R. Civ. P. 12(b)(1), Defendant moves to dismiss Plaintiff's claims on the grounds that this Court lacks subject matter jurisdiction to adjudicate Plaintiff's claims. Defendant also argues that Plaintiff has failed to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6). Specifically, Defendant argues that Plaintiff's claims are untimely, and that they also seek relief that is prohibited by the statutes applicable to the instant case. Plaintiff responds that Defendant mischaracterizes the statutes that are applicable to this case. Therefore Plaintiff argues that his claims are timely, and are also appropriate claims for this Court consider.

For the reasons set forth below, the Court agrees with Plaintiff, and DENIES Defendant's Motion to Dismiss.

MEMORANDUM ORDER
PAGE - 1

## II. DISCUSSION

### A. Background

The instant age discrimination claim arises from a series of events that have occurred over the past 12 years. The relevant facts are as follows:

Plaintiff John Carver ("Mr. Carver") was a former Assistant United States Attorney ("AUSA") with the United States Department of Justice ("DOJ") from 1976 to 1994 in various locations throughout the United States. Mr. Carver resigned in December of 1994, accepting a voluntary incentive payment of $25,000 during a buy-out period. After two years away from this job, Mr. Carver decided to reapply to the United States Attorney's Office ("USAO") for the Western District of Washington in June of 1996. Shortly thereafter, Mr. Carver was notified by the USAO that he would not be hired as an AUSA. Believing that he was well-qualified for the position, and upon learning that a much younger and less experienced attorney was hired for the position he was applying for, Mr. Carver filed a complaint of age discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") in September of 1996.

Nearly five years after he first filed his complaint, the EEOC held a hearing on Mr. Carver's case before an Administrative Judge ("AJ") on August 15, 2001. Approximately one year later, the AJ issued a decision finding that the DOJ had discriminated against Mr. Carver in violation of the Age Discrimination in Employment Act, as codified by 29 § U.S.C. 633(a) ("ADEA").[1] The AJ ordered the DOJ to appoint Mr. Carver to the position of AUSA effective as of the date in 1996 that Mr. Carver would have commenced his employment as an AUSA. The AJ also ordered the DOJ to pay Mr. Carver back pay and other benefits that he would have received had he not been discriminated against.

Dissatisfied with the AJ's decision, the DOJ appealed the AJ's ruling to the EEOC's Office of Federal Operations ("OFO"), which serves as the appellate body for the EEOC in

---

[1] The AJ's rationale for finding that the DOJ had discriminated against Mr. Carver is not relevant to the instant lawsuit. Accordingly, the Court finds it unnecessary to discuss the specific reasoning behind the AJ's decision.

federal sector claims. The OFO, after quite some time, issued a decision on August 8, 2005. (*See* Dkt. #7, Decl. of Carver, Ex. A). In its ruling, the OFO concluded that the "AJ's determination that the [DOJ's] reasons for not selecting [Mr. Carver] were a pretext for age discrimination [was] supported by substantial evidence in the record." (*Id.* at 25). The OFO specifically ordered the DOJ to offer Mr. Carver two forms of relief. First, the DOJ was ordered to offer Mr. Carver a position as an AUSA with the USAO in the Western District of Washington within thirty days. (*Id.* at 26, ¶ 1). Second, the DOJ was ordered to "determine the appropriate amount of back pay, including interest and all other benefits, due [to Mr. Carver], pursuant to 29 C.F.R. § 1614.501, no later than sixty (60) calendar days after the date this decision becomes final." (*Id.*, ¶ 2). Significantly, the order further specified that if there was a dispute regarding the exact amount of the back pay and/or benefits, Mr. Carver would be able to "petition for enforcement or clarification of the amount in dispute." (*Id.*)

In response to the first form of relief ordered by the OFO, the USAO subsequently offered Mr. Carver a position as an ASUA on October 11, 2005. Mr. Carver accepted the offer less than one month later. The USAO then offered Mr. Carver the option of accepting a Voluntary Early Retirement Authority ("VERA"), an early retirement plan that DOJ was offering to ASUAs in 2005. Discussions and negotiations followed, and Mr. Carver eventually agreed to accept the VERA while simultaneously declining the AUSA position he had accepted. The retirement retroactively became effective on June 1, 2005.

Meanwhile, and in response to the second form of relief ordered by the OFO, the DOJ deposited an amount in Mr. Carver's bank account for his back pay award on January 12, 2006.[2] Counsel for DOJ informed Mr. Carver that this amount represented the total wages that he would have earned as an AUSA from September 29, 1996 to June 1, 2005, less his gross earnings during this period from his interim employers, and less the $25,000 voluntary incentive

---

[2] Although Mr. Carver does not expressly state how much was deposited into his account, the record indicates that the DOJ paid $262,304.16 into his account. (Decl. of Carver, Ex. B at 32).

MEMORANDUM ORDER
PAGE - 3

payment he received when he initially resigned from the DOJ in 1994.[3] In addition, counsel for DOJ also notified Mr. Carter on February 3, 2006 that DOJ would not credit him with any of the federal annual or sick leave that he would have accrued from September 29, 1996 to June 1, 2005. DOJ did not dispute that back pay included federal annual and sick leave. Rather, DOJ informed Mr. Carter that it was entitled to offset the leave he accrued from his interim employers from the leave he would have accrued as an AUSA.

Mr. Carver objected to the representations made by DOJ for two main reasons. (*See* Decl. of Carver, ¶ 32). First, Mr. Carver claimed that DOJ used incorrect dates in calculating his total back pay amount. In particular, Mr. Carver alleged that DOJ began offsetting the amounts he earned from his interim employers a month and half too early, and also erroneously determined that the salary he would have received as an AUSA started one month too late. Second, Mr. Carver also questioned DOJ's authority to offset his federal annual and sick leave from leave he accrued from his interim employers. Mr. Carter made these objections known to DOJ via email in early February of 2006. DOJ responded by informing Mr. Carver that "to the extent you dispute the Agency's position on any of these issues, you may seek redress with an EEOC Compliance Officer[.]" (*Id.* at ¶ 47).

As a result, Mr. Carver filed a Petition for Enforcement with the EEOC on February 28, 2007. In his petition, Mr. Carver asked the EEOC to recalculate the exact amount of his back pay. Mr. Carver also asked the EEOC to clarify the extent to which DOJ must credit him for federal annual leave and sick leave benefits from September 29, 1996 to June 1, 2005. Mr. Carver further requested that the EEOC order DOJ to issue a final report of compliance, detailing how DOJ reached the amount of back pay it awarded to him.

On December 12, 2007, nearly sixteen months after Mr. Carver filed his petition, the EEOC issued its decision. (Decl. of Carver, Ex. B). Carlton M. Hadden ("Mr. Hadden"), Director of the OFO at the EEOC, determined that "[e]xcept for submission of its final

---

[3] Mr. Carver worked for the Washington State Attorney General's Office and the King County Prosecuting Attorney's Office during this interim period.

compliance report, we find that the agency has completed it obligation to [Mr. Carver] under our Order and that the [DOJ] has complied with our Order." (*Id.* at 32). Mr. Hadden also concluded that "[t]o the extent that [Mr. Carver] sought enforcement or consideration by the Commission of events subsequent to receipt of his payment in January 2006, the Commission has no jurisdiction or legal authority over these matters and events." (*Id.*).

Mr. Carver thereafter brought the instant lawsuit in this Court on February 27, 2008. Mr. Carver specifically seeks an order from the Court that DOJ credit him with the federal annual and sick leave that he would have accrued from September 29, 1996 to June 1, 2005. (Pl.'s Compl, ¶ 45).[4] Mr. Carver further requests that Court order DOJ to "calculate the back pay award to Plaintiff using only his gross earnings during the period of September 29, 1996 to June 1, 2005 as the offset against the gross wages he would have earned as an AUSA during that same period." (*Id.*). Mr. Carver additionally request that "the Court order DOJ to issue a final compliance report concerning its back pay paid to the Plaintiff." (*Id.*).

Defendant now moves to dismiss Mr. Carver's claims based on the regulatory scheme that governs federal-sector employment discrimination claims. Defendant advances three primary arguments in support of its motion to dismiss. First, Defendant argues that Mr. Carver did not bring his action in a timely manner pursuant to 29 C.F.R. § 1614.407(a). Second, Defendant argues that Mr. Carver is seeking *de novo* review of a remedy without placing liability at issue, something he is barred from doing based on Defendant's analysis of the relevant statutes. Lastly, Defendant argues that to the extent Mr. Carver is seeking judicial enforcement of the EEOC decision, his complaint must also be dismissed because the EEOC has already determined that the agency is in compliance with its underlying order. The Court shall

---

[4] Although Mr. Carver does not expressly indicate the exact amounts he feels he is entitled to under the original EEOC decision, the Court finds that it is not a negligible amount. As Mr. Carver indicates in his complaint, if the DOJ credited Mr. Carver with the annual leave that he claims he should have received, he would be entitled to a lump sum payment for 226 days. (Pl.'s Compl, ¶ 45). Additionally, if the DOJ credited Mr. Carver with the sick leave that he claims he should have received, he would be credited with 113 additional hours, ultimately entitling him to additional service credit towards his retirement. (*Id.*); (Decl. of Carver, ¶ 44).

discuss and analyze the relevant statutes in detail below.

**B. Standard of Review**

A motion to dismiss under Fed. R. Civ. P. 12(b)(1) addresses the court's subject matter jurisdiction. Federal courts are courts of limited jurisdiction. *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994). They possess only that power authorized by United States Constitution and statute, which is not to be expanded by judicial decree. *Id.* The burden of establishing the subject matter jurisdiction rests upon the party asserting jurisdiction. *Id.* When considering a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1), the Court is not restricted to the face of the pleadings, but may review any evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction. *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988); *Kamen v. American Tele. & Telegraph Co.*, 791 F.2d 1006, 1010 (2d Cir. 1986).

Meanwhile, under Fed. R. Civ. P. 12(b)(6), the Court must dismiss a complaint if a plaintiff can prove no set of facts to support a claim which would entitle him to relief. *Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002); *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). In deciding a motion to dismiss, the Court accepts as true all material allegations in the complaint and construes them in the light most favorable to the plaintiff. *See Newman v. Sathyavaglswaran*, 287 F.3d 786, 788 (9th Cir. 2002); *Associated Gen. Contractors v. Metro. Water Dist.*, 159 F.3d 1178, 1181 (9th Cir. 1998). However, conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss. *Associated Gen. Contractors*, 159 F.3d at 1181. When a complaint is dismissed for failure to state a claim, "leave to amend should be granted unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986).

**C. Timeliness**

As an initial matter, the Court discusses Defendant's argument that Mr. Carver's action is untimely. The statute controlling the timeliness of an action brought in federal district court

under the ADEA is set forth in 29 C.F.R. § 1614.407, which provides:

> A complainant who has filed an individual complaint . . . is authorized under . . . the ADEA . . . to file a civil action in an appropriate United States District Court:
>
> (a) Within 90 days of receipt of the final action on an individual or class complaint if no appeal has been filed;
>
> (b) After 180 days from the date of filing an individual or class complaint if an appeal has not been filed and final action has not been taken;
>
> (c) Within 90 days of receipt of the Commission's final decision on an appeal; or
>
> (d) After 180 days from the date of filing an appeal with the Commission if there has been no final decision by the Commission.

29 C.F.R § 1614.407(a)-(d).

Based on the wording of subsection (a), Defendant argues that Mr. Carver should have brought the instant lawsuit within 90 days of the August 8, 2005 EEOC decision affirming the AJ's findings referenced above. Alternatively, Defendant argues that Mr. Carver should have filed his lawsuit within 90 days of January 12, 2006, the date on which the DOJ tendered the back pay to Mr. Carver. Either way, Defendant indicates that this lawsuit, which was brought on February 27, 2008, is well outside the applicable window set forth by 29 C.F.R. § 1614.407.

However, Defendant's argument contradicts the express directions given to Mr. Carver upon receiving his decision from the EEOC regarding his Petition for Enforcement on December 12, 2007. In this decision, the EEOC clearly advised Mr. Carver that: "You have the right to file a civil action in an appropriate United States District Court within ninety (90) calendar days from the date you receive this decision." (Decl. of Carver, Ex. B at 33). Furthermore, Mr. Carver filed the Petition for Enforcement pursuant to the rights provided to him that arose from the original August 8, 2005 decision. In that decision, the EEOC advised Mr. Carver that "[i]f the agency does not comply with the Commission's order, the complainant may petition for the Commission for enforcement of the order. 29 C.F.R. § 1614.503(a). The complainant also has *the right to file a civil action* to enforce compliance with the Commission's order prior to *or following an administrative petition for enforcement.*" (Decl. of Carver, Ex. A at 27) (emphasis added). Notably, 29 C.F.R. § 1614.503(a) holds that "[a] complainant may petition the Commission for enforcement of a decision issued under the

MEMORANDUM ORDER
PAGE - 7

Commission's appellate jurisdiction."

Here, Mr. Carver filed the instant lawsuit on February 27, 2008, approximately 77 days after the EEOC issued its decision on Mr. Carver's Petition for Enforcement. Therefore he complied with the rights provided to him by the EEOC. In addition, the applicable statutes required him to bring a civil action within 90 days of a final action. The final action in this case was the EEOC's December 12, 2007 decision. Thus, Mr. Carver was also in compliance with the express provisions of 29 C.F.R. § 1614.407(a).

To hold otherwise would lead to an inequitable result for Mr. Carver. As Mr. Carver points out in his opposition brief, it was not until six months after the EEOC's August 8, 2005 decision that DOJ informed Mr. Carver that they would not include the leave totals in his back pay. It was also not until five months after the August 8, 2005 decision that the DOJ deposited the back pay into Mr. Carver's bank account. Therefore if the Court adopted Defendant's logic that Mr. Carver should have brought this lawsuit within 90 days of the August 8, 2005 order, it would place Mr. Carver in the conundrum of having to bring a lawsuit before even knowing of DOJ's position with respect to the findings made by the AJ. And to the extent that Defendant argues that Mr. Carver should have filed this lawsuit within 90 days of the DOJ's tender of payment to Mr. Carver's bank account, i.e. January 12, 2006, the EEOC clearly informed Mr. Carver that he could file a civil action *following* a petition to the EEOC, a route he ultimately pursued. Consequently, to find that Mr. Carver is now time-barred from bringing the instant lawsuit would contradict the representations made by the EEOC. Given the facts of this case, the Court finds that such a result was certainly not intended by Congress when enacting this statute. The Court therefore concludes that Mr. Carver's lawsuit is timely, and his claim is not barred by the provisions of 29 C.F.R. § 1614.407.

### D. Mr. Carver's Requested Relief

Defendant additionally argues that Mr. Carver's claims should be dismissed because his lawsuit is essentially seeking additional back pay. Therefore Defendant claims that Mr. Carver is asking for a modification of the remedy, which turns his case into a *de novo* review of the remedy afforded by the EEOC. Furthermore, Defendant argues that Mr. Carver is precluded

from seeking a *de novo* review because case law suggests that a federal employee may not file a civil action challenging only the remedy afforded by a favorable EEOC ruling. Alternatively, Defendant argues that if Mr. Carver is only seeking enforcement of the EEOC decision, his claim is also barred because the EEOC has already determined that the DOJ was complying with its underlying August 8, 2005 decision. Mr. Carver responds to both arguments that Defendant mischaracterizes his complaint and the relevant statutes. Mr. Carver further claims that he is not prohibited from bringing the instant lawsuit because he is only seeking enforcement of the original EEOC decision. This Court agrees with Mr. Carver.

The relevant statute that governs Mr. Carver's ability to seek review of the EEOC's decision on his Petition for Enforcement is found at 29 C.F.R. § 1614.503. As mentioned above, 29 C.F.R. § 1614.503(a) specifically holds that "[a] complainant may petition the Commission for enforcement of a decision issued under the Commission's appellate jurisdiction." Furthermore, 29 C.F.R. § 1614.503(g) provides:

> Where the Commission has determined that an agency is not complying with a prior decision, *or where an agency has failed or refused to submit any required report of compliance*, the Commission shall notify the complainant of the right to file a civil action for *enforcement* of the decision pursuant to Title VII, *the ADEA*, the Equal Pay Act or the Rehabilitation Act and to seek judicial review of the agency's refusal to implement the ordered relief pursuant to the Administrative Procedures Act, 5 U.S.C. 701 et seq., and the mandamus statute, 28 U.S.C. 1361, or to commence de novo proceedings pursuant to the appropriate statutes.

*Id.* (emphasis added).

Therefore it is clear that based on this statute, where an agency has either refused or failed to submit a final report of compliance, a federal employee has the right to pursue a civil action in district court for enforcement. *See Timmons v. White*, 314 F.3d 1229, 1232 (10th Cir. 2003). In a suit for enforcement, the issue is not liability or the remedy, "but rather whether the federal employer has complied with the OFO's remedial order." *Laber v. Harvey*, 438 F.3d 404, 417 (4th Cir. 2006) (citations omitted). A civil action for enforcement is distinguishable from a *de novo* civil action. In the latter situation, a complainant must place both liability and the remedy at issue before the district court. *See Timmons*, 314 F.3d at 1234. In other words, a complainant "is not entitled to limit the district court's review to the issue of remedy only."

*Id.*

Nevertheless, "if a federal employee has received a favorable determination at the administrative level, he or she is able to go into federal court to *enforce* that order without risking de novo review of the merits." *Haskins v. Dept. of Army*, 808 F.2d 1192, 1199 n.4 (6th Cir. 1987) (emphasis in original). And although the law with respect to this distinction is sparse in the Ninth Circuit, the Court finds that at least one Ninth Circuit case has adopted this line of reasoning. *See Girard v. Rubin*, 62 F.3d 1244, 1247 (9th Cir. 1995) (quoting *Haskins* and applying its rule of law to a Title VII and age discrimination action brought by an IRS employee against the Secretary of Treasury). Ultimately, the Court finds that a complainant may not selectively challenge portions of an administrative decision without risking a de novo review of his underlying claim, unless he is only seeking enforcement of the underlying decision.

In this case, the Court finds that Mr. Carver fits within the rubric of 29 C.F.R. § 1614.503(g) and its corresponding case law. Specifically, Mr. Carver is only seeking enforcement of the original August 8, 2005 order. As mentioned previously, that order specifically directed the DOJ to "determine the appropriate amount of back pay, including interest and all other benefits, due complainant, pursuant to 29 C.F.R. § 1614.501, no later than sixty (60) calendar days after the date this decision becomes final." (Decl. of Carver, Ex. A at 26). The order also directed DOJ to "submit a report of compliance, as provided in the statement entitled 'Implementation of the Commission's Decision.' The report *shall include supporting documentation of the agency's calculation of back pay and other benefits due complainant, including evidence that the corrective action has been implemented. Copies of all submissions to the Commission shall be sent to the complainant*." (*Id.* at 27) (emphasis added). Furthermore, in the OFO's decision on Mr. Carver's Petition for Enforcement, Mr. Madden specifically found the DOJ had not yet submitted this final compliance report. (*Id.*, Ex. B at 32). To this date, Mr. Carver indicates that he has not yet received this report, and Defendant does not dispute this contention. As a result, Mr. Carver has received a favorable determination at the administrative level, but the DOH has not yet fully complied with its obligations as noted by Mr. Madden at the OFO. Therefore Mr. Carver is entitled to seek

*enforcement* of that decision without placing liability at issue. *Haskins*, 808 F.2d at 1199, n.4.

Tellingly, Defendant fails to address the relevant language of 29 C.F.R. § 1614.503(g) in both its motion and its reply. Defendant argues that a finding of non-compliance is a prerequisite to a civil action for enforcement. But the statutory import of 29 C.F.R. § 1614.503(g) is abundantly clear in holding that a complainant has a right to a civil action for enforcement where an agency has "failed or refused to submit any required report of compliance[.]" Moreover, Mr. Carver specifically requests in his complaint "[t]hat the Court order DOJ to issue a final compliance report concerning its back pay paid to Plaintiff." (Pl.'s Compl., ¶ 45). Therefore the Court will not preclude Mr. Carver from seeking *enforcement* of the original August 8, 2005 EEOC decision.

Notably, the Court finds that Defendant is not completely off-base in suggesting that Mr. Carver is seeking additional back pay. Mr. Carver is indeed seeking additional amounts that are above and beyond what the DOJ originally tendered to him on January 12, 2006. However, Defendant's logic and the case law it cites in support of this reasoning is premised on the fact that there was a finding of *complete* compliance by the EEOC. But there very clearly was not. The OFO contradicted itself in its final decision on Mr. Carver's Petition for Enforcement. On the one hand, Mr. Madden claimed that the DOJ was in complete compliance with the original EEOC order by denying Mr. Carver's Petition for Enforcement. On the other, Mr. Madden indicates that DOJ has yet to issue its final compliance report. Without exploring the reasons why such a contradictory decision was issued by the OFO, the bottom line is that Mr. Carver should not be penalized for this contradictory finding. More importantly, Mr. Carver should not be precluded from seeking enforcement of the underlying EEOC decision, something he is unequivocally permitted to do by statute.

Furthermore, whether Mr. Carver's requested relief constitutes additional back pay cannot be determined without this final compliance report. The amounts that DOJ already deposited into Mr. Carver's bank account have yet to be substantiated by a complete and final compliance report pursuant to the EEOC's original orders to the DOJ. The relief that Mr. Carver is now seeking is intertwined with the DOJ's obligation to issue this report to Mr.

Carver. Without this report, there is no way for Mr. Carver, or this Court, to conclude with any certainty that Mr. Carver is seeking *additional* amounts to the original relief afforded by the EEOC. Certainly Mr. Carver is entitled to know the basis and methodology the DOJ employed in coming to the amount it ultimately advanced to him on January 12, 2006.

Ultimately, the Court shall adhere to the plain language of the relevant statute, 29 C.F.R. § 1614.503(g). *See United States v. Lewis*, 67 F.3d 225, 228 (9th Cir. 1995) ("Canons of statutory construction dictate that if the language of a statute is clear, [courts] look no further than that language in determining the statute's meaning.") (citations omitted). That statute very clearly allows for a civil action for *enforcement* "where an agency has failed to refused or submit any required report of compliance[.]" 29 C.F.R. § 1614.503(g). Thus, to deny Mr. Carver's claims at this time would contradict the express terms of this statute as well as fundamental principles of statutory construction. As a result, the Court finds no justification in dismissing Mr. Carver's complaint at this time. Defendant's motion to dismiss shall be DENIED.

### III. CONCLUSION

Having reviewed Defendant's motion, Plaintiff's response, Defendant's reply, the declaration and exhibits thereto, and the remainder of the record, the Court hereby finds and orders:

(1) Defendant's Motion to Dismiss (Dkt. #5) is DENIED.

(2) Defendant shall serve and file its answer to Plaintiff's Complaint no later than August 15, 2008.

(3) The Clerk is directed to forward a copy of this Order to all counsel of record.

DATED this 25 day of July, 2008.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE

MEMORANDUM ORDER
PAGE - 13