**THE HONORABLE RICARDO S. MARTINEZ**

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JOHN C. CARVER, ) | |
| ) | |
| Plaintiff, ) | **NO. C08-0354 RSM** |
| ) | |
| vs. ) | **PLAINTIFF'S MOTION FOR** |
| ) | **SUMMARY JUDGMENT** |
| MICHAEL B. MUKASEY, ATTORNEY ) | |
| GENERAL, UNITED STATES DEPARTMENT ) | **NOTE ON MOTION CALENDAR:** |
| OF JUSTICE, ) | **Friday, September 26, 2008** |
| ) | |
| Defendant. ) | |
| ) | |

## I.    <u>INTRODUCTION</u>

The Plaintiff, John C. Carver (hereinafter "Plaintiff" or "Carver"), has filed a

Complaint under 29 U.S.C. § 633a, a section of the Age Discrimination in Employment Act

("ADEA"), 29 U.S.C. §§ 621-634, seeking to enforce an Order issued by the United States

Equal Employment Opportunity Commission ("EEOC") on August 8, 2005, directing the

Defendant's predecessor as the Attorney General of the United States and the Department of

Justice ("DOJ") to provide the Plaintiff with various relief pursuant to 29 U.S.C. § 633a and

29 C.F.R. § 1614.407.   All of the relief sought follows from the Plaintiff's previous

successful litigation against DOJ under the ADEA.  Because there is no genuine issue of

1   material fact, and because the Plaintiff is entitled to judgment as a matter of law, he is

2   hereby moving for summary judgment pursuant to Fed. R. Civ. P. 56.

3   ## II.    STATEMENT OF MATERIAL FACTS

4           The Petitioner's action in this matter against DOJ concerns his non-selection in

5   the summer of 1996 for the position of Assistant United States Attorney (AUSA) with the

6   United States Attorney's Office (USAO) for the Western District of Washington.[1]   In a

7   Statement of Findings and Decision dated September 25, 2002, EEOC Administrative

8   Law Judge ("AJ") James Carroll found that DOJ had in fact discriminated against Carver

9   on the basis of his age in not selecting him for the AUSA position for which he had

10  applied in 1996, and ordered relief of several types.  *Carver Decl. at 3*.  A copy of Judge

11  Carroll's decision is attached as Exhibit A to the Carver Declaration.  DOJ appealed.  The

12  key ruling for purposes of the instant litigation was the decision ("Decision") of the

13  EEOC's Office of Federal Operations ("OFO"), issued on August 8, 2005, a copy of

14  which is attached as Exhibit B to the Carver Declaration.  In this Decision, the OFO

15  affirmed the findings of the AJ, and ordered DOJ to "take corrective action in accordance

16  with the ORDER below." *Ex. B to Carver Decl. at 8*.  The Decision also contained a

17  separate Order, which also required DOJ to take various remedial actions.  *Ex. B to*

18  *Carver Decl. at 8*.

19          Among the relief ordered by the OFO in its Decision was a mandate to DOJ to

20  offer Carver a position as AUSA in the Western District of Washington.  *Ex. B to Carver*

21  *Decl. at 8.*  The Decision also ordered DOJ to determine the appropriate amount of back

---

[1] The Plaintiff is filing herewith the Declaration of John C. Carver in Support of Plaintiff's Motion for Summary Judgment (hereinafter "Carver Decl."), along with attached Exhibits, which sets out the facts outlined herein in greater detail.

PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT
NO. C08-0354 RSM - Page - 2

1    pay, "including interest and all other benefits", due the Plaintiff for the period during

2    which he would have been employed as an AUSA but for DOJ's age discrimination. *Ex.*

3    *B to Carver Decl. at 8.* This Decision specifically ordered that the back pay, interest and

4    all other benefits due to the Plaintiff should be determined pursuant to 29 C.F.R. §

5    1614.501. *Ex. B to Carver Decl. at 8.* Finally, the OFO's Decision directed DOJ to

6    "submit a report of compliance", to include "supporting documentation of the agency's

7    calculation of back pay and other benefits due complainant", to both the EEOC and to the

8    Plaintiff. *Ex. B to Carver Decl. at 8.* Because DOJ did not ask for reconsideration of the

9    OFO's Decision of August 8, 2005, the Decision was final as of that date, per 29 C.F.R. §

10   1614.405 (b). *Carver Decl. at 4.*

11

12          After the EEOC issued its Decision of August 8, 2005, DOJ offered the Plaintiff a

13   position as an AUSA by letter dated October 11, 2005, which Plaintiff accepted by letter

14   dated November 8, 2005. *Carver Decl. at 5-6.* Around the same time, DOJ first offered

15   the Plaintiff a VERA (Voluntary Early Retirement Authority), or "early out" retirement,

16   whereby the Plaintiff would be deemed to have retired from DOJ on June 1, 2005.

17   *Carver Decl. at 7.* Under the terms of this offer, the Plaintiff would have been deemed to

18   have started at DOJ on September 29, 1996 (the date the parties agreed that the Plaintiff

19   would have started his employment with DOJ but for the age discrimination), and to have

20   worked at DOJ until June 1, 2005, at which time he would have retired, with full credit

21   for his employment since September 29, 1996. *Carver Decl. at 7.* Around this same time

22   frame, October to December 2005, DOJ was also calculating the back pay due to the

23   Plaintiff. The parties agreed that this back pay calculation would be based on the gross

24   wages the Plaintiff would have earned as an AUSA, less his "Total Outside Earnings"

25

26

LAW OFFICES OF
JUDITH A. LONNQUIST, P.S.
1218 THIRD AVENUE, SUITE 1500
SEATTLE, WA 98101-3021
TEL 206.622.2086   FAX 206.233.9165

during the same period, that is, his gross wages from the Washington State Attorney General's Office ("AGO") combined with his gross wages from his subsequent employment with the King County, Washington Prosecuting Attorney's Office ("KCPAO"). *Carver Decl. at 5.* The parties also agreed that this back pay calculation could also deduct $25,000 from the Plaintiff's gross federal earnings as repayment of a DOJ Voluntary Separation Incentive Payment ("VSIP") that the Plaintiff had accepted when he left the USAO in Seattle in December 1994. The Plaintiff had agreed at that time to pay back this $25,000 to DOJ if he came back to its employ within five years. *Carver Decl. at 5-6.*

In early January 2006, the Plaintiff decided to accept the "early out" retirement that DOJ had offered him. *Carver Decl. at 8.* The parties agreed that for purposes of the back pay owed to the Plaintiff, the relevant period would be from September 29, 1996 to June 1, 2005, when the Plaintiff would be deemed to have retired from DOJ. *Carver Decl. at 8- 9.* The Plaintiff informed DOJ at the same time that he would decline the job offer with DOJ that he had previously accepted. *Carver Decl. at 8.*

On January 12, 2006, DOJ deposited funds in the Plaintiff's credit union account for the back pay amount. This amount was supposed to be comprised of the total wages that the Plaintiff would have earned had he been employed at DOJ from September 29, 1996 to June 1, 2005, less his gross earnings (*i.e.*, before any deductions) during this period from the AGO and the KCPAO, and less the $25,000 VSIP repayment which the Plaintiff had agreed to repay. *Carver Decl. at 10-11.*

After DOJ's payment of back pay to the Plaintiff on January 12, 2006, the issue of the benefits still owed to the Plaintiff, specifically, the federal annual leave and sick leave benefits that he would have accrued as an AUSA, remained unresolved. The "Order"

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
NO. C08-0354 RSM - Page - 4

section of the EEOC's Decision of August 8, 2005 had ordered DOJ to pay the Plaintiff "the appropriate amount of back pay, including interest and all other benefits". *Carver Decl. at 4, and Ex. B to Carver Decl. at 8-9.* The Plaintiff provided to DOJ information on the vacation time he had accrued while employed at the AGO and KCPAO during this same period. *Carver Decl. at 12-13.*

In an email to the Plaintiff on February 3, 2006, counsel for DOJ for the first time took the position that it would not pay the Plaintiff anything for his annual leave for the period September 29, 1996 to June 1, 2005. DOJ claimed the right to offset the Plaintiff's vacation time from his interim State employers from the total federal annual leave he would have accrued as an AUSA. Such an offset would still have left some federal annual leave owed to the Plaintiff, as the Plaintiff's interim vacation times earned were far less than the federal annual leave he would have earned during this same period as an AUSA. *Carver Decl. at 13-14.* Counsel for DOJ went on in this email to claim a further offset against the Plaintiff's federal annual leave benefit based on the fact that the Plaintiff's "state positions and related earnings were based on a 35-hour week", while "the relevant federal position and related earnings were based on a 40-hour work week". *Carver Decl. at 14 and Ex. E to Carver Decl. at 1.* As a result, DOJ counsel went on to say, "assuming you worked every day in the federal position that you worked in your state positions, less the state vacation time used, you would have used all of your earned federal vacation time, and then some, in your federal position." *Carver Decl. at 14 and Ex. E to Carver Decl. at 1.*

DOJ took a similar position with regard to the federal sick leave the Plaintiff was entitled to for the period September 29, 1996 to June 1, 2005. The sick leave issue was significant, even though the Plaintiff was not going to back to work for DOJ, because

PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT
NO. C08-0354 RSM - Page - 5

LAW OFFICES OF
JUDITH A. LONNQUIST, P.S.
1218 THIRD AVENUE, SUITE 1500
SEATTLE, WA 98101-3021
TEL 206.622.2086   FAX 206.233.9165

1    federal law provides that for CSRS retirees, every eight hours of unused sick leave at the

2    time of retirement would be credited as one day of service for retirement annuity calculation

3    purposes. *Carver Decl. at 14*. In this same email of February 3, 2006, counsel for DOJ took

4    the position that the Plaintiff was not entitled to any such service credit for the federal sick

5    leave accrued during the period of discrimination. This was because, DOJ counsel claimed,

6    the KCPAO would pay the Plaintiff "35% of your accrued sick leave balance upon

7    retirement". *Carver Decl. at 14 and Ex. E to Carver Decl. at 2*. Counsel went on to claim

8    that the "35% payout benefit for your King's (sic) County state position greatly exceeds any

9    alternate benefits under the VERA program, i.e., extending your service period under the

10   program". *Carver Decl. at 14-15 and Ex. E to Carver Decl. at 2*.

11   

12       The Plaintiff filed a Petition for Enforcement with the EEOC on February 28, 2006,

13   along with a Declaration in Support executed by him. *Carver Decl. at 16*. The Plaintiff

14   filed a Supplement to this Petition for Enforcement with the EEOC on April 28, 2006, along

15   with a Supplemental Declaration by the Plaintiff, followed by a Second Supplement to the

16   Petition for Enforcement, filed with the EEOC on May 20, 2006. *Carver Decl. at 16*. In his

17   Petition for Enforcement and its Supplements, the Plaintiff asked the EEOC to clarify the

18   back pay retirement contributions offset issues raised by DOJ, and requested that the

19   Commission enforce the Order contained in its Decision of August 8, 2005 (*Ex. B to Carver*

20   *Decl. at 8-9*) with respect to the extent to which DOJ must credit the Plaintiff with federal

21   annual leave and sick leave benefits for the period September 29, 1996 to June 1, 2005.

22   *Carver Decl. at 16*.

23       In his Petition for Enforcement and its Supplements, the Plaintiff also pointed out

24   that it appeared that DOJ had offset his federal back pay with his gross earnings from his

25   

26   

PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT
NO. C08-0354 RSM - Page - 6

LAW OFFICES OF
JUDITH A. LONNQUIST, P.S.
1218 THIRD AVENUE, SUITE 1500
SEATTLE, WA 98101-3021
TEL 206.622.2086   FAX 206.233.9165

1  interim employment starting on August 12, 1996, instead of the agreed-upon start date for

2  calculation of his back pay, September 29, 1996. *Carver Decl. at 16.* The Plaintiff

3  therefore requested that the EEOC order DOJ to issue a final report of compliance. He

4  further requested that, should it appear from a report of compliance that DOJ had used a

5  starting date of August 12, 1996 for its calculation of his outside earnings, that it be

6  ordered to recalculate those earnings based on a starting date of September 29, 1996, in

7  order to align properly with the calculation of his federal back pay from DOJ. *Carver

8  Decl. at 16.*

9  

10      The Plaintiff received a Response to the Petition for Enforcement from DOJ on

11  August 1, 2006. *Carver Decl. at 19.* A copy of the Response to the Petition for

12  Enforcement that DOJ filed with the EEOC (hereinafter "DOJ Response") is attached to the

13  Carver Declaration as Exhibit G, without the attachments to the original. In its Response,

14  DOJ put the amount of federal annual leave that the Plaintiff would have accrued as an

15  AUSA during the period September 29, 1996 to June 1, 2005 at 226 days, and the

16  corresponding amount of sick leave at 113 days. *Ex. G to Carver Decl. at 28, 30.* The

17  Plaintiff agrees that these figures are accurate. *Carver Decl. at 19.* Based on the

18  information that DOJ received from the Plaintiff's interim employers, the DOJ Response put

19  the total amount of vacation time earned during this same period from the Plaintiff's interim

20  employers at 127 days. *Ex. G to Carver Decl. at 28.* Likewise, DOJ's Response put the

21  corresponding total sick leave the Plaintiff "accrued" at approximately 71 days. The

22  Plaintiff accepts DOJ's interim vacation time figure and the sick leave figure as well.

23  *Carver Decl. at 19.*

24  

25  

26  

PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT
NO. C08-0354 RSM - Page - 7

LAW OFFICES OF
JUDITH A. LONNQUIST, P.S.
1218 THIRD AVENUE, SUITE 1500
SEATTLE, WA 98101-3021
TEL 206.622.2086  FAX 206.233.9165

1   It was not until December 14, 2007 that the Plaintiff received in the mail a Decision

2   on a Petition for Enforcement from the EEOC, dated December 12, 2007, a copy of which is

3   attached to the Carver Declaration as Exhibit H.  *Carver Decl. at 21.*  In this Decision, the

4   EEOC ruled that DOJ, "[e]xcept for submission of its final compliance report", had

5   "completed its obligation to [Plaintiff] under our Order [of August 8, 2005] and that the

6   agency [DOJ] has complied with our Order".  *Ex. H to Carver Decl. at 2.*  The EEOC

7   accordingly denied the Plaintiff's Petition for Enforcement.  *Ex. H to Carver Decl. at 3.*  The

8   Plaintiff then filed his Complaint under 29 U.S.C. § 633a in this Court on February 29,

9   2008.  DOJ has still not filed a final compliance report.  *Carver Decl. at 21.*

### III.    STATEMENT OF ISSUES

1.   Is DOJ entitled to offset from the federal annual leave that the Plaintiff would have accrued as an AUSA during the period September 29, 1996 to June 1, 2005 the vacation time he earned from his interim employers during that same period and/or the five-hour per week "vacation benefit" he allegedly used during his employment with the KCPAO from July 1, 1999 to June 1, 2005?

2.   Is DOJ entitled to offset from the federal sick leave that the Plaintiff would have accrued as an AUSA during the period September 29, 1996 to June 1, 2005 the sick leave he earned from his interim employers during that same period and/or the amount of unused sick leave for which he would be entitled to be paid by the KCPAO upon his retirement from that office on or after October 19, 2014?

LAW OFFICES OF
**JUDITH A. LONNQUIST, P.S.**
1218 THIRD AVENUE, SUITE 1500
SEATTLE, WA 98101-3021
TEL 206.622.2086  FAX 206.233.9165

3. Is the Plaintiff entitled to a back pay award based upon the gross earnings he would have earned as an AUSA from September 29, 1996 to June 1, 2005, less gross earnings he earned during his interim employment during this same period, and less the $25,000 VSIP he accepted in December 1994?

4. Is the Plaintiff entitled to a final compliance report from DOJ showing how the Plaintiff's back pay award was calculated?

## IV. EVIDENCE RELIED UPON

1. The Declaration of John C. Carver and the exhibits attached thereto;

2. The records and files herein.

## V. AUTHORITY

**A.    Standard for Summary Judgment**

A Court must grant summary judgment when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56 (c). The moving party must inform the Court of the basis for its motion, and identify pleadings, depositions, answers to interrogatories and the like which it believes demonstrate the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If the moving party meets its initial burden, the opposing party must present "significant probative evidence tending to support its claim or defense." *Intel Corp. v. Hartford Accident & Indemnity Co.*, 952 F.2d 1551, 1558 (9th Cir. 1991). The nonmoving party must go beyond the pleadings and specifically designate facts showing an issue for trial. *Celotex Corp.*, 477 U.S. at 322-23.

Here, the relevant facts are virtually, if not entirely, undisputed. The only issues pertain to the application of the law to those facts, and there is no genuine issue of material

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
NO. C08-0354 RSM - Page - 9

LAW OFFICES OF
JUDITH A. LONNQUIST, P.S.
1218 THIRD AVENUE, SUITE 1500
SEATTLE, WA 98101-3021
TEL 206.622.2086  FAX 206.233.9165

1    fact.  Summary judgment is therefore appropriate, and as the Plaintiff will demonstrate, he is

2    entitled to judgment as a matter of law.

3          **B.**    **DOJ Is Not Entitled to Offset Any Amounts from the Federal Annual
4                  Leave the Plaintiff Would Have Accrued As an AUSA from September
                   29, 1996 to June 1, 2005**
5    .

6         As a preliminary matter, the Plaintiff is entitled to the federal annual leave he would

7    have accrued during the period covered by his back pay award, September 29, 1996 to June

8    1, 2005.[2]  The relevant portion of the EEOC's Decision of August 8, 2005, reads as follows:

9            The agency shall determine the appropriate amount of back pay,
10        including interest and all other benefits, due complainant, pursuant to 29
          C.F.R. § 1614.501, no later than sixty (60) calendar days after the date this
11        decision becomes final.  The complainant shall cooperate in the agency's
          efforts to compute the amount of back pay and benefits due and shall
12        provide all relevant information requested by the agency.  If there is a
          dispute regarding the exact amount of back pay and/or other benefits, the
13        agency shall issue a check to the complainant for the undisputed amount
          within sixty (60) calendar days of the date the agency determines the
14        amount it believes to be due.  The complainant may petition for
          enforcement or clarification of the amount in dispute.  The petition for
15        clarification or enforcement must be filed with the Compliance Officer, at
          the address referenced in the statement entitled "Implementation of the
16        Commission's Decision."

17
     *Ex. B to Carver Decl. at 8.*  29 C.F.R. § 1614.501 (b)(1)(ii) prescribes, in pertinent part,
18
     that "[b]ack pay, computed in the manner prescribed by 5 CFR 550.805, shall be awarded
19
     from the date the individual would have entered on duty until the date the individual
20
     actually enters on duty …."
21

22        5 C.F.R. § 550.805 is one of a set of regulations enacted by OPM pursuant to the

23   authority granted by Congress in the Back Pay Act, 5 U.S.C. § 5596.  5 C.F.R. § 550.805

24   (a) (2) directs that:  "The agency shall compute for the period covered by the corrective
25

26   ---
     [2] In other words, from the date on which, by agreement of the parties, the Plaintiff would have started as an
     AUSA but for the illegal age discrimination of DOJ through the date the Plaintiff was deemed to have retired
     from DOJ, upon his acceptance of DOJ's offer of the "early out" retirement.

PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT
NO. C08-0354 RSM - Page - 10

LAW OFFICES OF
**JUDITH A. LONNQUIST, P.S.**
1218 THIRD AVENUE, SUITE 1500
SEATTLE, WA 98101-3021
TEL 206.622.2086  FAX 206.233.9165

1  action the pay, allowances, and differentials the employee would have received if the

2  unjustified or unwarranted personnel action had not occurred." 5 C.F.R. § 550.803

3  defines "[p]ay, allowances and differentials" in pertinent part as meaning "pay, leave, and

4  other monetary employment benefits to which an employee is entitled by statute or

5  regulation and which are payable by the employing agency to an employee during

6  periods of Federal employment."   Thus, the applicable regulations specifically define

7

8  "pay, allowances and differentials" to include "leave."

9       The EEOC has held many times that it construes "benefits" broadly to include,

10  among other things, annual leave and sick leave.  *See, e.g., Carmon-Coleman v.*

11  *Department of Defense*, EEOC Petition No. 04A30030.  DOJ, in responding to the

12  Plaintiff's Petition for Enforcement, cited many more such EEOC decisions in agreeing

13  with the proposition that "benefits", for purposes of back pay calculations, are to be

14
construed broadly.  *Ex. D to Carver Decl. at 16*.  In sum, the parties agree that under the

15  terms of the regulation the EEOC ordered DOJ to use in calculating the Plaintiff's back

16  pay, 5 C.F.R. § 550.805, the Plaintiff is entitled to the federal annual leave and sick leave

17
he would have accrued as an AUSA from September 29, 1996 to June 1, 2005.

18

19       The real issue, then, is whether DOJ is authorized to make the offsets it claims

20  from the leave the Plaintiff would have accrued in federal service.  DOJ is claiming two

21  different categories of offsets from the Plaintiff's accrued federal annual leave.  The first

22  claimed offset is the amount of vacation time the Plaintiff earned with the AGO and the

23  KCPAO from September 29, 1996 to June 1, 2005.  The parties are in agreement that the

24  Plaintiff accrued 35 days with the AGO, and another 94 days with the KCPAO during

25
this period.  *Ex. D to Carver Decl. at 28;  Carver Decl. at 21-22.*

26

PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT
NO. C08-0354 RSM - Page - 11

The only provisions anywhere in 5 C.F.R. § 550.805 authorizing a federal agency like DOJ to make any deductions or offsets from the Plaintiff's gross back pay award are those contained in 5 C.F.R. § 550.805 (e) (1)-(4).[3]  Because this subsection figures so prominently in the issues that will be discussed in more detail, *infra*, it is worth setting out all of its provisions here:

> (e)  In computing the net amount of back pay payable under section 5596 of title 5, United States Code, and this subpart, an agency must make the following offsets and deductions (in the order shown) from the gross back pay award:
>
> (1)  Any outside earnings (gross earnings less any associated business losses and ordinary and necessary business expenses) received by an employee for other employment (including a business enterprise) undertaken to replace the employment from which the employee was separated by the unjustified or unwarranted personnel action during the interim period covered by the corrective action.  Do not count earnings from additional or "moonlight" employment the employee may have engaged in while Federally employed (before separation) and erroneously separated.
>
> (2)  Any erroneous payments received from the Government as a result of the unjustified or unwarranted personnel action, which, in the case of erroneous payments received from a Federal employee retirement system, must be returned to the appropriate system.  Such payments must be recovered from the back pay award in the following order:
>
> (i)  Retirement annuity payments (i.e., gross annuity less deductions for life insurance and health benefits premiums, if those premiums can be recovered by the affected retirement system from the insurance carrier);
>
> (ii)  Refunds of retirement contributions (i.e., gross refund before any deductions);
>
> (iii)  Severance pay (i.e., gross payments before any deductions); and
>
> (iv)  A lump-sum payment for annual leave (i.e., gross payment before any deductions).
>
> (3)  Authorized deductions of that type that would have been made from the employee's pay (if paid when properly due) in accordance with the normal order of precedence for deductions from pay established by the agency, subject to any applicable law or regulation, including, but not limited to, the following types of deductions, as applicable:
>
> (i)  Mandatory employee retirement contributions toward a defined benefit plan, such as the Civil Service Retirement System or the defined

---

[3] Interpretation of the applicable sections of the Code of Federal Regulations is a legal question, and is therefore reviewed *de novo*. *See Suzy's Zoo v. C.I.R..*, 273 F.3d 875, 878 (9th Cir. 2001); *Soltani v. Western & Southern Life Ins. Co.*, 258 F.2d 1038 (9th Cir. 2001).

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
NO. C08-0354 RSM - Page - 12

benefit component of the Federal Employees Retirement System;

(ii) Social Security taxes and Medicare taxes;

(iii) Health benefits premiums, if coverage continued during a period of erroneous retirement (with paid premiums recoverable by the retirement system) or is retroactively reinstated at the employee's election under 5 U.S.C. 8908 (a);

(iv) Life insurance premiums if --

(A) Coverage continued during a period of erroneous retirement;

(B) Coverage was stopped during an erroneous suspension or separation and the employee suffered death or accidental dismemberment during that period (consistent with 5 U.S.C. 8706 (d));  or

(C) Additional premiums are owed because of a retroactive increase in basic pay;  and

(v) Federal income tax withholdings.

(Note:  See appendix A to this subpart for additional information on computing certain deductions.)

(4) Administrative offsets under 31 U.S.C. 3716 to recover any other outstanding debt(s) owed to the Federal Government by the employee, as appropriate.

5 C.F.R. § 550.805 (e).

In order for DOJ to make any offsets from the federal annual leave the Plaintiff would have accrued as an AUSA during the relevant period pursuant to the provisions of 5 C.F.R. § 550.805 (e) (1)-(4), those offsets must necessarily come within the definition of "gross earnings," because such offsets cannot conceivably be categorized as "erroneous payments from received from the Government" (5 C.F.R. § 550.805 (e) (2)), "[a]uthorized deductions of that type that would have been made from the employee's pay" (5 C.F.R. § 550.805 (e) (3)), or "[a]dministrative offsets under 31 U.S.C. 3716" (5 C.F.R. § 550.805 (e) (4)).  The only remaining possible category in 5 C.F.R. § 550.805 (e) (1) is "outside earnings."  Because, as will be discussed below, the offsets DOJ claims from the Plaintiff's leave are not subject to characterization as "outside earnings," they are not authorized by 5 C.F.R. § 550.805 (e) (1)-(4).

LAW OFFICES OF
JUDITH A. LONNQUIST, P.S.
1218 THIRD AVENUE, SUITE 1500
SEATTLE, WA 98101-3021
TEL 206.622.2086  FAX 206.233.9165

1   As already noted, *supra,* the parties are in agreement that "pay, allowances, and

2   differentials," as used in 5 C.F.R. § 550.805 (a) (2), is construed broadly and includes

3   leave.   No corresponding broad construction is mandated for "gross earnings" as that

4   term is used in 5 C.F.R. § 550.805 (e) (1).  Likewise, this subpart of the Code of Federal

5   Regulations contains no provision that defines "earnings" to include leave. Rather, OPM

6   expressly used a distinct term ("earnings") to define the offsets to which a discriminating

7   employer is entitled, instead of repeating its use of "back pay" or "pay, allowances, and

8   differentials." The Supreme Court has held that when words differ in Congressional

9   pronouncements, the Court normally presumes that "'Congress acts intentionally and

10   purposely in the disparate inclusion or exclusion'." *Burlington Northern & Santa Fe*

11   *Railway Co. v. White,* 548 U.S. 53, 126 S.Ct. 2405, 2412, 165 L.Ed.2d 345 (2006),

12   *quoting Russello v. United States,* 464 U.S. 16, 23, 104 S.Ct. 296, 78 L.Ed.2d 17 (1983).

13   A similar presumption should apply in the case of an agency's promulgation of a section

14   of the Code of Federal Regulations.  The Plaintiff respectfully submits that in the context

15   of a salaried employee, like the Plaintiff, "gross earnings" retains its plain meaning, and

16   signifies "gross wages", exclusive of such benefits as leave.

17

18        In its Response to the Plaintiff's Petition for Enforcement before the EEOC, DOJ

19   made the claim that "the parties appear to agree that the term 'outside earnings', as it is

20   used in 5 C.F.R. § 550.805 (e) (1), is ambiguous" (*Ex. D to Carver Decl. at 29*).  DOJ

21   went on to argue in this Response that "the parties specifically agreed and acknowledged,

22   as demonstrated by correspondences and pleadings in this case, the law, rule and

23   regulations are silent on the issue at bar" (*Ex. D to Carver Decl. at 25*). One final such

24   assertion made in DOJ's Response before the EEOC is its statement that "the parties

1    mutually agreed to have the EEOC resolve the vast majority of the issues described above

2    based on the fact that there was no precise guidance in law, rule or regulations readily

3    available to guide the parties" (*Ex. G to Carver Decl. at 32*).

4

5        The Plaintiff first notes that he has never agreed that the term "outside earnings,"

6    as used in this regulation, is "ambiguous"; he has instead consistently maintained that that

7    term does not embrace annual or sick leave, and cannot therefore justify DOJ's offset of

8    interim vacation earned from his accrued federal annual leave.  More importantly, even if

9    the term "outside earnings" were ambiguous, as DOJ claims, the Plaintiff should prevail.

10   As DOJ's Response before the EEOC acknowledged (*Ex. G to Carver Decl. at 16*,

11   *quoting Dropka v. U.S. Postal Service*, 2002 WL 31781275 at *3), "the uncertainties

12   involved in a back pay determination should be resolved against the agency which has

13   already been found to have committed acts of discrimination."  The EEOC has reaffirmed

14   this position numerous times.  *See, e.g., Brown v. England, Secretary, Department of the

15   Navy*, EEOC Petition No. 04A40043 (January 24, 2005).

16

17       Federal courts have also cited this policy.  Several circuits have held that in

18   actions brought under Title VII, ambiguities in back pay calculations are resolved against

19   the discriminating employer.  *Durham Life Ins. Co. v. Evans,* 166 F.3d 139, 156 (3rd Cir.

20   1999);  *Wooldridge v. Marlene Industries Corp.*, 875 F.2d 540 (6th Cir. 1989).  This same

21   principle applies to back pay here, although the action here was brought under the

22   ADEA.  As the Supreme Court has pointed out:  "The ADEA and Title VII share

23   common substantive features and also a common purpose: 'the elimination of

24   discrimination in the workplace.'"  *McKennon v. Nashville Banner Publishing Co.*, 513

25   U.S. 352, 358, 115 S.Ct. 879, 130 L.Ed.2d 852 (1995) (*quoting Oscar Meyer & Co. v.

26

PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT
NO. C08-0354 RSM - Page - 15

LAW OFFICES OF
JUDITH A. LONNQUIST, P.S.
1218 THIRD AVENUE, SUITE 1500
SEATTLE, WA 98101-3021
TEL 206.622.2086  FAX 206.233.9165

1  *Evans*, 441 U.S. 750, 756, 99 S.Ct. 2066, 2071, 60 L.Ed.2d 609 (1979)).  Ambiguities in

2  the calculation of a back pay awarded under the ADEA here, then, should likewise be

3  construed against DOJ, which is the discriminatory employer in the case at bar.

4

5      This doctrine regarding ambiguities in the calculation of back pay is particularly

6  important given that the burden of proving that it is entitled to an offset from a back pay

7  award lies with the defendant-employer.  *Rodriguez v. Taylor,* 569 F.2d 1231, 1243 (3rd

8  Cir. 1977), *cert. denied*, 436 U.S. 913, 98 S. Ct. 2254, 56 L.Ed.2d 414 (1978); *Blum v.*

9  *Witco Chemical Corp.*, 829 F.2d 367, 375 (3rd Cir. 1987).  This is consistent with cases

10 under the ADEA that have held it is the defendant-employer's burden to prove that the

11 plaintiff-employee failed to mitigate his damages. *Cassino v. Reichhold Chemicals, Inc.*,

12 817 F.2d 1338, 1345 (9th Cir. 1987), *cert. denied*, 484 U.S. 1047 (1988); *Jackson v. Shell*

13 *Oil Co.,* 702 F.2d 197, 202 (9th Cir. 1983).  These holdings are also consistent with

14 EEOC case law holding that the burden of limiting the remedy rests with the defendant

15 agency.  *Besemer v. Frank, Postmaster General,* EEOC Petition No. 04890005

16 (December 14, 1989).  Given these principles, DOJ's concession that "the term 'outside

17 earnings', as it is used in 5 C.F.R. § 550.805 (e) (1), is ambiguous" is fatal to its claim to

18

19 be able to offset the federal annual leave with the vacation time the Plaintiff earned from

20 his interim State employers.  If DOJ is correct regarding the uncertainty surrounding the

21 basis for its offset, it cannot meet its burden to qualify for the offset as a matter of law,

22 given that any uncertainty must be resolved against DOJ.

23

24      Deducting the Plaintiff's total interim vacation time of 35 days vacation at the

25 AGO and 94 days earned at the KCPAO during the interim period would result in

26 deducting a total of 129 days from the 226 days of annual leave the parties agree that the

PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT
NO. C08-0354 RSM - Page - 16

1    Plaintiff would have accrued as an AUSA from September 29, 1996 to June 1, 2005,

2    which would still leave an annual leave balance of 97 days.   In its Response to the

3    Plaintiff's Petition for Enforcement with the EEOC, DOJ calculated away these

4    remaining 97 days, by characterizing the Plaintiff's 35-hour work week at the KCPAO as

5    a "leave benefit":

6

7        Further, as an added **leave benefit**, the Petitioner [i.e., Plaintiff] was
         required to work a 35 rather than a 40-hour work week, thereby enjoying
8        an additional 223 days (6 years x 5 hours/week) of **leave benefit**  in his
         state prosecutor's position.   Thus, the Petitioner earned and enjoyed
9        approximately 356 days of **leave-related benefit** while employed with the
         state during the relevant time period. (emphasis added)
10

11   *Ex. D to Carver Decl. at 28.*

12       Here, DOJ has simply created a new category, the "leave-related benefit", to

13   transmute the fact that the Plaintiff works a 35-hour week at the KCPAO into an offset

14   against the federal annual leave he would have accrued as an AUSA.[4]   In this same

15   Response to the Plaintiff's EEOC Petition for Enforcement, DOJ did not cite any

16   authority whatsoever for its asserted right to offset the so-called "leave-related benefit"

17   from the Plaintiff's federal annual leave, no doubt for the very good reason that there is

18   nothing approaching such authority in the Code of Federal Regulations, or elsewhere.

19   Instead, to justify its specious legerdemain, DOJ can only lamely invoke what it claims is

20

21   the "spirit, intent and purpose" of 5 C.F.R. § 550.805 (e).   *Ex. G to Carver Decl. at 29*.

22   The Plaintiff will not repeat all of its arguments set out at pps. 12-17 of this Motion,

23   *supra*, but will simply incorporate them by reference herein.   DOJ is not entitled to an

24   offset based on the Plaintiff's supposed "leave-related benefit".

25

26   _____

[4]  Significantly, when the Plaintiff took the 35-hour-per-week position at KCPAO, he began earning a
higher salary than he had in his 40-hour-per-week position at the AGO, thus increasing the amount of offset
DOJ was able to claim against what would have been his federal gross earnings.  *Carver Decl. at 16*.

PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT
NO. C08-0354 RSM - Page - 17

LAW OFFICES OF
JUDITH A. LONNQUIST, P.S.
1218 THIRD AVENUE, SUITE 1500
SEATTLE, WA 98101-3021
TEL 206.622.2086  FAX 206.233.9165

1    **C.    DOJ Is Not Entitled to Offset Any Amounts from the Federal Sick**
2    **Leave the Plaintiff Would Have Accrued As an AUSA from September**
     **29, 1996 to June 1, 2005**

3    DOJ's claim to offsets against the federal sick leave that the Plaintiff would have

4    accrued as an AUSA from September 29, 1996 to June 1, 2005 tracks its claims regarding

5    his federal annual leave.  DOJ acknowledged in its Response to the Plaintiff's Petition for
6
     Enforcement with the EEOC that the Plaintiff would have accrued 113 days of federal sick
7
8    leave during the relevant period.  *Ex.D to Carver Decl. at 30*.  DOJ then proceeded to

9    offset these 113 days of sick leave down to zero, beginning by claiming an offset of the 71

10   days that the parties agree the Plaintiff earned in his interim employment.  *Ex. D to Carver*

11   *Decl. at 30-31*.

12
     As with its claims to being entitled to offset the Plaintiff's federal annual leave
13
     with his interim vacation time, DOJ's arguments in its EEOC Response do not cite
14
15   specific authority within the applicable CFR sections.  DOJ instead relies on its own

16   notions of "unjust enrichment" and "double recovery".  *Ex. D to Carver Decl. at 30-31*.

17   Rather than reiterate the arguments made at pps. 12-17 of the instant Motion, *supra*,

18   Plaintiff will instead incorporate them by reference.  DOJ cannot meet its burden of
19
     showing entitlement to the offset of the sick leave amounts, and to the extent it has raised
20
21   any ambiguity in the relevant regulations, that ambiguity must be resolved in favor of the

22   Plaintiff.

23   Offsetting his interim sick leave (71 days) from the amounts of federal leave

24   Plaintiff would have accrued in federal employment but for DOJ's illegal age

25   discrimination (113 days) would still leave 42 days of federal sick leave.  As with the
26

Plaintiff's annual leave, DOJ then reduces this figure to zero with another calculation, explained as follows in its Response to the Petition for Enforcement with the EEOC:

> Significantly, the Petitioner [i.e., Plaintiff], in his state position, is entitled to a lump sum payment of 35% of the value of earned sick leave at the time of severance. Thus, assuming the Agency [i.e., DOJ] were to add the 113 days of earned sick leave as creditable service to the Petitioner's retirement annuity, the Agency would be required to offset this credit by the value of the Petitioner's earned sick leave at the state position during the same time period.

*Ex. D to Carver Decl. at 31.* The reference above to a lump sum payment of 35% of the value of earned sick leave is not universally payable "at the time of severance," as DOJ states in the section immediately above. Instead, as the Director of Personnel at the KCPAO put it in an email to the Plaintiff, "if you retire from King County you will be paid for 35% of your sick leave balance." *Ex. D to Carver Decl..* In other words, the Plaintiff is entitled to this benefit only if he leaves the KCPAO when he is entitled to draw a retirement annuity (that is, on or after October 19, 2014, when he turns 65), and to the extent he has any unused sick leave at that time. *Carver Decl. at 15.* It is obviously impossible to say if the Plaintiff will even still be alive in October 2014, or whether he will still be capable of and desirous of working as a Senior Deputy Prosecuting Attorney until that time. And it is equally impossible to say how much, if any, unused sick leave he will have at that time. These facts underscore the extremely speculative nature of the sick leave benefit that DOJ claims to be entitled to offset from the Plaintiff's accrued federal sick leave.

In short, even aside from its usual failure to cite any authority, much less any persuasive authority, DOJ's argument is premised on events in the future that might or might not actually take place. The parties' disagreement over the amount of federal sick

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
NO. C08-0354 RSM - Page - 19

LAW OFFICES OF
JUDITH A. LONNQUIST, P.S.
1218 THIRD AVENUE, SUITE 1500
SEATTLE, WA 98101-3021
TEL 206.622.2086  FAX 206.233.9165

1   leave to which the Plaintiff is entitled is by no means strictly academic.  As a CSRS

2   retiree, the Plaintiff is entitled to one day of additional service credit for every eight hours

3   of unused sick leave at the time of his retirement from DOJ on June 1, 2005.  *See* 5 U.S.C.

4   § 8347 and 5 C.F.R. § 831.302.  There is no language in 5 C.F.R. § 550.805 (e) that would

5   authorize such an offset from the federal sick leave benefit to which the Plaintiff is entitled

6   to as part of his back pay award.  DOJ is therefore not entitled to any offsets at all as a

7   matter of law, and must credit the Plaintiff with 113 days of unused sick leave as of his

8

9   retirement from DOJ on June 1, 2005.

10      D.    **The Plaintiff Is Entitled to a Back Pay Award Based on His Gross**
11            **Federal Earnings from September 29, 1996 to June 1, 2005, Less His**
             **Gross Interim Earnings during That Period**
12
            The parties have agreed that the basis for the calculation of the back pay due the
13
    Plaintiff is the period starting on September 29, 1996, the date the Plaintiff would have
14
    resumed working for DOJ but for its age discrimination.  *Carver Decl. at 5, 7.*  This
15
    period would end as of June 1, 2005, the date of the Plaintiff's retirement from DOJ
16
    under the terms of the "early out" retirement DOJ offered him.  *Carver Decl. at 9-10.*
17
    The EEOC then mandated that the back pay, interest and all other benefits due to the
18
19  Plaintiff should be determined pursuant to 29 C.F.R. § 1614.501.  29 C.F.R. § 1614.501

20  (b)(1)(ii) prescribes, in pertinent part, that "[b]ack pay, computed in the manner

21  prescribed by 5 CFR 550.805, shall be awarded from the date the individual would have

22  entered on duty until the date the individual actually enters on duty …."

23

24      None of the above-listed criteria for the back pay calculation seems to be in

25  dispute.  Although the parties do not agree on the precise extent of the term "gross

26  earnings" as it is used in 5 C.F.R. § 550.805 (e) (1), both the Plaintiff and DOJ agree that

PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT
NO. C08-0354 RSM - Page - 20

DOJ is entitled to offset the Plaintiff's gross wages from his interim employment from the gross amount of wages he would have earned as an AUSA during the relevant period. It appears, however, that there have been several variations from this agreed-upon method of calculation in the way that DOJ calculated the back pay it wired to the Plaintiff's account in January 2006.

First of all, it appears that DOJ used the incorrect time frame for the Plaintiff's interim employment. The limited documentation DOJ has provided regarding its method of calculating the Plaintiff's back pay suggests that, from the federal wages the Plaintiff would have earned, DOJ offset his gross wages from the AGO for the period August 12, 1996 to May 31, 1999, as well as his gross wages for his subsequent employment at the KCPAO. *Carver Decl. at 5.* In using an offset date beginning on August 12, 1996 instead of September 29, 1996, DOJ used the salary for 48 additional days at the AGO as an offset from the Plaintiff's federal pay, and thus understated the resulting back pay amount.

The Plaintiff raised this issue in his Petition for Enforcement he filed with the EEOC in February 2006. *Carver Decl. at 16.* In its Response filed with the EEOC, DOJ conceded that it had mistakenly used the earlier start date for the offset amount of August 12, 1996, instead of the correct date, September 29, 1996. *Carver Decl. at 19-20; Ex. G to Carver Decl. at 15.* DOJ went on in this Response to promise to make the "appropriate adjustments" to its back pay calculations once the EEOC ruled on the Petition for Enforcement. *Ex. G to Carver Decl. at 15.* Despite this concession, and the parties' agreement that the back pay calculations were mistaken, the EEOC's Decision

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
NO. C08-0354 RSM - Page - 21

On a Petition for Enforcement of December 12, 2007 inexplicably does not even mention this issue.  *Ex. H to Carver Decl.*.

DOJ has yet to make the "appropriate adjustments" it promised to make after the EEOC had issued its Decision on the Petition for Enforcement.  The Plaintiff is therefore asking the Court to order DOJ to make those adjustments now.  This issue is bound up with the Plaintiff's request for a final compliance report from DOJ on the entire back pay issue, which will be discussed in more detail, *infra*.

The second specific back pay calculation issue is based on an email from one of the attorneys representing DOJ in calculating and then sending the back pay to the Plaintiff in late 2005 and early 2006.  According to that attorney, the amount wired to the Plaintiff's credit union account on January 12, 2006 was based on the "[t]otal back pay **w/o** interest from 10-24-96 to 6-1-05". (emphasis in original).  *Carver Decl. at 10; Ex. C to Carver Decl.*.  DOJ therefore may have used too short of a period in calculating the Plaintiff's AUSA gross wages, if its calculations did indeed begin on October 24, 1996, instead of on September 29, 1996.  The Plaintiff is entitled to a back pay award using the period September 29, 1996 to June 1, 2005, because of the parties' agreement in the wake of the EEOC's Decision of August 8, 2005 affirming the findings of the AJ.  DOJ should therefore be ordered to make this adjustment to its back pay calculations as well.

### E.    The Plaintiff Is Entitled to a Final Compliance Report

In the final paragraph of the "Order" section of its Decision of August 8, 2005, the EEOC ordered DOJ to do the following:

> 5.    The agency is further directed to submit a report of compliance, as provided in the statement entitled "Implementation of the Commission's Decision."    The report shall include supporting documentation of the

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
NO. C08-0354 RSM - Page - 22

LAW OFFICES OF
**JUDITH A. LONNQUIST, P.S.**
1218 THIRD AVENUE, SUITE 1500
SEATTLE, WA 98101-3021
TEL 206.622.2086  FAX 206.233.9165

1   agency's calculation of back pay and other benefits due complainant,
2   including evidence that the corrective action has been implemented.
    Copies of all submissions to the Commission shall be sent to the
3   complainant.

4   *Ex. B to Carver Decl. at 9.*  Later, in its Decision on a Petition for Enforcement of

5   December 12, 2007, the EEOC made the following finding: "Except for submission of

6   its final compliance report, we find that the agency has completed its obligation to

7   Petitioner under our Order [of August 7, 2005] and that the agency has complied with our

8   Order." *Ex. H to Carver Decl. at 2.*  Left unexplained was just how the EEOC could

9
10  conclude that DOJ had "completed its obligation" to the Plaintiff when DOJ had not yet

11  submitted its final compliance report.  At any rate, as of the date of the filing of the

12  Carver Declaration, more than three years after the EEOC issued its Order, DOJ had still

13  not filed its final compliance report.  *Carver Decl. at 21.*

14

15                          **VI.**   **CONCLUSION**

16      Based on the foregoing, the Plaintiff is entitled to judgment as a matter of law,

17  and therefore respectfully requests that the Court enter an Order granting him judgment

18  on his Complaint under 29 U.S.C. § 633a, and grant him all of the relief requested in his

19  Complaint, namely:

20
21      That the Court order DOJ to credit the Plaintiff with the 226 days of federal

22  annual leave the Plaintiff would have accrued as an AUSA during the period September

23  29, 1996 to June 1, 2005, and further order DOJ to pay the Plaintiff a lump sum for this

24  amount of annual leave upon his retirement from DOJ on June 1, 2005, pursuant to 5

25  U.S.C. § 5551 and any other applicable stature or regulation;

26

PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT
NO. C08-0354 RSM - Page - 23

1    That the Court order DOJ to credit the Plaintiff with the 113 days of federal sick

2  leave the Plaintiff would have accrued as an AUSA during the period September 29,

3  1996 to June 1, 2005, and further order DOJ to credit the Plaintiff with 113 days more of

4  total service as of his retirement from DOJ on June 1, 2005, pursuant to 5 C.F.R. §

5  831.302 and any other applicable statute or regulation;

6

7    That the Court order DOJ to calculate the back pay award to the Plaintiff using

8  only his gross earnings during the period September 29, 1996 to June 1, 2005 as the

9  offset against the gross wages he would have earned as an AUSA during that same

10  period;

11    That the Court order DOJ to issue a final compliance report, documenting the

12  back pay paid to the Plaintiff;

13

14    That the Court order DOJ to pay Plaintiff's attorney's fees herein, costs of suit,

15  pre- and post-judgment interest, and such other relief as this Court deems appropriate.

16

17    DATED this 28th day of August, 2008.

18

19    LAW OFFICES OF JUDITH A.
    LONNQUIST, P.S.

20

21     _/s/_ Judith A. Lonnquist_____
    JUDITH A. LONNQUIST, WSBA #06421

22    Attorney for Plaintiff John C. Carver

23

24

25

26

LAW OFFICES OF
JUDITH A. LONNQUIST, P.S.
1218 THIRD AVENUE, SUITE 1500
SEATTLE, WA 98101-3021
TEL 206.622.2086  FAX 206.233.9165

1

**CERTIFICATE OF SERVICE**

2

3      I hereby certify that on this day, I caused to be electronically filed the foregoing
documents with the Clerk of the Court using the CM/ECF system which will send
notification of such filing to the following:

4

5    Marion J. Mittet, WSBA #12758         jamie.mittet@usdoj.gov

6

7
Dated: August 28, 2008

8
                                    LAW OFFICES OF
9                                   JUDITH A. LONNQUIST, P.S.

10                                    s/ Judith A. Lonnquist
11                                   Judith A. Lonnquist, WSBA No. 06421
                                    Attorney for Plaintiff
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

LAW OFFICES OF
**JUDITH A. LONNQUIST, P.S.**
1218 THIRD AVENUE, SUITE 1500
SEATTLE, WA 98101-3021
TEL 206.622.2086  FAX 206.233.9165